This is an appeal from an order of the Public Utilities Commission revoking the plaintiff's certificate or franchise for the operation of three bus lines in Norwalk.
Restrictions requiring a minimum ten cent fare were imposed on all three routes. The only route directly serving the same territory as the established C.R. L. Co. route along West Avenue is route three, and an additional restriction was imposed requiring that no passengers be picked up between a point 1,000 feet northwest of the junction of New Canaan and Bartlett Avenues and the South Norwalk railroad station.
The revocation complained of followed a citation setting forth numerous alleged violations as to route three, a hearing thereon, and a finding that the respondent "deliberately violated the restrictions in his route three for the gain involved."
Based upon the evidence then presented, "and upon the records of the Commission involving the respondent herein before referred to" the Commission concludes Fabrizio is not a fit and proper person to operate a motor bus service, and therefore revoked his license. *Page 342 
Upon the trial of the appeal the first important issue concerned a matter of procedure. The plaintiff contended the trial was de novo, and that this Court ought to hear, or rehear, the testimony of all the witnesses. The Court was in sympathy with this idea, because it felt it could reach a more satisfactory result if it heard and observed the various witnesses, but upon careful consideration of subdivision (g) of section 1414c of the Cumulative Supplement to the General Statutes (1935), I concluded the Legislature had intended to change, and had actually changed the former procedure, and I took the case upon the record and the transcript certified by the Commission. Doubting the correctness of my ruling, I have reconsidered the matter, but have now reached the same conclusion. The statute provides that "The court, upon such appeal, shall review, upon the record so certified, the proceedings of the commission and examine the question of the legality of the order, authorization or decision appealed from and the propriety and expediency of such order . . . so far as said court shall have cognizance of such subject and shall proceed thereon in the same manner as upon complaints for equitable relief." The last clause is confusing and beclouds an otherwise clearly expressed statute. The word "thereon" means something, but what that something is is in doubt. But the doubt is dispelled by the next sentence, which provides that "If, upon hearing such appeal, it shall appear to the court that any testimony has been improperly excluded by the commission or that the facts disclosed by the record are insufficient for the equitable disposition of the appeal, it shall refer the case back to the commission to take such evidence as it may direct. . . ." This is conclusive, for if this Court heard the testimony there would quite obviously be no need of referring it back to the Commission to take the same testimony.
The reason for this departure from our former procedure is obvious, and it is unnecessary to point out analogies. Incidentally, it reflects the faith and confidence which the Legislature justly reposes in our Public Utilities Commission.
The second main point is the claim that this statute is unconstitutional. I pass lightly over this contention, for it is not the province of this Court to declare statutes unconstitutional unless it is fairly clear that they do contravene the Constitution. It does not so appear in this case.
The remaining question is whether the order appealed from *Page 343 
is arbitrary and unreasonable. Based on the hearing of November 8th alone, I conclude that the Commission was legally justified in its action. The only doubt arises from the fact that the violations had to do entirely with route three, and that possibly the certificate holder did not sanction, or even know of the violations. But they were numerous and persistent, even flagrant. The Commission heard all the witnesses face to face, including the owner, and I do not feel disposed to disturb its conclusion that the owner knew of them. Like other triers of fact, they are entitled to draw reasonable and logical inferences from the evidence.
Fabrizio's certificate carried three routes. "The Commission may revoke . . . any certificate . . . for wilful and repeated violations." It has properly found those violations. Wrapped up in the point also is the question whether he is a fit person to possess the certificate; and they have found he is unfit.
The plaintiff complains, with some reason, that the witnesses were employees of a competitor, the C. R. L. Co., and were biased. The Commission sized them up, considered their relationship, and chose to believe them. A cold page does not reveal too much, but a reading of the transcript of testimony supports the conclusion reached — especially in the absence of testimony available to the plaintiff.
The remaining testimony has to do with the so-called "bad boy" theory. The Commission had had other experiences with Mr. Fabrizio which it set up in full in the record. It based its final conclusion in part upon this previous experience. As hereinbefore stated, I think there is enough without this. But I believe also that it has a legal right to consider its past records, and that this Court may legally consider such as are fully set forth in the appeal record. Its right to revoke is based on "repeated" violations. The board is a committee of experts, and possesses much technical and exploratory machinery. It keeps in constant touch with all who hold its certificates. It watches, inspects and supervises them. This Court has no such facilities. As long as the Commission uses its experience fairly, and sets it up in full detail on appeal, it is exercising an almost necessary right. If it is not the law, it ought to be; there is every indication, from the wording of the various statutes creating the Commission and defining its powers, that such is the law.
 Judgment is to be entered dismissing the appeal.